**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-5312 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| SYNEOS HEALTH, INC., JOHN M. | : **SECURITIES EXCHANGE ACT OF** |
| DINEEN, BARBARA W. BODEM, | : **1934** |
| BERNADETTE CONNAUGHTON, | : |
| MICHELLE KEEFE, WILLIAM E. | : **JURY TRIAL DEMANDED** |
| KLITGAARD, KENNETH F. MEYERS, | : |
| MATTHEW E. MONAGHAN, DAVID | : |
| WILKES, M.D., and ALFONSO G. | : |
| ZULUETA, | : |
| | : |
| Defendants. | : |

---------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Syneos Biosciences, Inc. ("Syneos or the "Company") and the members Syneos' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Syneos by affiliates of Elliott Investment Management L.P. ("Elliott"), Patient Square Capital, LP ("Patient Square") and Veritas Capital Fund Management, L.L.C. ("Veritas" and together with Elliott and Patient Square, "the Consortium").

2.  Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on June 15, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Star Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Star Parent, Inc. ("Parent"), will merge with and into Syneos, with Syneos surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 10, 2023 (the "Merger Agreement"), each Syneos stockholder will receive $43.00 in cash (the "Merger Consideration") for each Syneos share owned. Both Merger Sub and Parent are affiliates of the Consortium.

3.  As discussed below, Defendants have asked Syneos' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, BofA Securities, Inc. ("BofA") and Centerview Partners LLC ("Centerview" and together with BofA, the "Financial Advisors") in support of their fairness opinions.

4.  It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to Syneos' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Syneos stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant John M. Dineen has served as a member of the Board since December 2018 and is the Chair of the Board.

11. Individual Defendant Barbara W. Bodem has served as a member of the Board since January 2022.

12. Individual Defendant Bernadette Connaughton has served as a member of the Board since November 2019.

13. Individual Defendant Michelle Keefe has served as a member of the Board since April 2022 and is the Company's Chief Executive Officer.

14. Individual Defendant William E. Klitgaard has served as a member of the Board since October 2022.

15. Individual Defendant Kenneth F. Meyers has served as a member of the Board since October 2016.

16. Individual Defendant Matthew E. Monaghan has served as a member of the Board since October 2016.

17. Individual Defendant David Wilkes, M.D. has served as a member of the Board since June 2021.

18. Individual Defendant Alfonso G. Zulueta has served as a member of the Board since January 2022.

19. Defendant Syneos is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 1030 Sync Street, Morrisville, North Carolina 27560-5468. The Company's stock trades on the NASDAQ Global Select Market under the symbol "SYNH."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

22. Syneos, operates as an integrated biopharmaceutical solutions company. The Company operates through two segments, Clinical Solutions and Commercial Solutions. The

Clinical Solutions segment offers services for the development of diagnostics, drugs, biologics, devices, and digital therapeutics in Phase I to IV of clinical development. This segment offers individual services, including regulatory consulting, project management, protocol development, investigational site recruitment, clinical monitoring, technology-enabled patient recruitment and engagement, clinical home health services, clinical trial diversity, biometrics, and regulatory affairs. The Commercial Solutions segment provides commercialization services, including deployment solutions, communications solutions, such as public relations, advertising, and medical communication; and consulting services. Its customers include companies in the biopharmaceutical, biotechnology, and medical device industries. It operates in North America, Europe, the Middle East, Africa, the Asia-Pacific, and Latin America. The Company was formerly known as INC Research Holdings, Inc. and changed its name to Syneos Health, Inc. in January 2018. Syneos was incorporated in 2010 and is headquartered in Morrisville, North Carolina.

23. On May 10, 2023, the Company announced the Proposed Transaction:

> MORRISVILLE, N.C., May 10, 2023 (GLOBE NEWSWIRE) -- Syneos Health, Inc. (Nasdaq: SYNH) ("Syneos Health" or the "Company"), a leading fully integrated biopharmaceutical solutions organization, today announced that it has entered into a definitive agreement to be acquired by a consortium of private investment firm affiliates composed of Elliott Investment Management ("Elliott"), Patient Square Capital ("Patient Square"), and Veritas Capital ("Veritas") for $43.00 per share in cash in a transaction valued at approximately $7.1 billion, including outstanding debt.
>
> The purchase price represents a 24% premium to Syneos Health's unaffected closing stock price on February 13, 2023, the last trading day prior to media speculation regarding the Company.
>
> "This agreement is the culmination of a comprehensive review of opportunities available to Syneos Health, including interest from multiple parties with the assistance of independent financial and legal advisors. The Syneos Health Board of Directors unanimously determined that this all-cash transaction maximizes value for our

shareholders and is in the best interests of the Company and all stakeholders," said John Dineen, Chair of the Syneos Health Board of Directors. "The Company has a strong operating foundation, differentiated, integrated solutions and a focus on being committed to customers. We believe this transaction will enable Syneos Health to continue to accelerate its growth strategy, enhance customer delivery and evolve the organization toward a tech-enabled future."

"We have long appreciated Syneos Health's leadership position in serving large pharma and biotech customers globally, across both clinical development and commercialization," said Senior Portfolio Manager, Marc Steinberg, on behalf of Elliott. "Syneos Health is at an important stage in its evolution. We look forward to partnering with Patient Square and Veritas, as well as the talented team at Syneos Health, to further reinforce the Company's core capabilities and help drive its next phase of growth."

"Based on first-hand experience in the industry, we are huge believers in the value that contract research and commercial organizations provide to their clients by accelerating and maximizing the likelihood of clinical success and optimizing a product's potential to impact patients," said Jim Momtazee, Managing Partner of Patient Square. "We have followed the journey of Syneos Health for years and believe the Company and its world-class employees provide a strong foundation to build upon, always providing unparalleled service to clients."

"Syneos Health provides mission-critical clinical research and commercialization services to leaders in the biopharmaceutical space," said Ramzi Musallam, CEO and Managing Partner of Veritas. "Consistent with our successful history of transforming businesses in the healthcare ecosystem, and in partnership with the Syneos Health team and the consortium, Veritas looks forward to driving investment in the Company to underscore Syneos Health's position as a market leader and to enhance its ability to deliver medical innovations to patients across the globe."

**Approvals and Timing**

Completion of the transaction is expected in the second half of 2023, subject to the approval of Syneos Health shareholders and the satisfaction of other customary closing conditions, including regulatory approvals.

The Syneos Health Board of Directors unanimously approved the merger agreement and intends to recommend that Syneos Health

shareholders vote in favor of it at a Special Meeting of Stockholders, to be scheduled as soon as practicable.

The transaction is not subject to a financing condition. Goldman Sachs Bank USA, UBS Investment Bank, RBC Capital Markets, BMO Capital Markets, HSBC Securities (USA) Inc., Wells Fargo Bank, NA, Citigroup, Jefferies LLC, Macquarie Capital, Natixis, and Truist Securities have provided committed financing for the transaction.

Upon completion of the transaction, Syneos Health will become a private company and shares of Syneos Health Class A common stock will no longer trade on the Nasdaq. The Company expects to maintain its headquarters in Morrisville, North Carolina.

**First Quarter 2023 Results / Cancellation of Earnings Call**

In a separate press release to be issued today, Syneos Health will announce financial results for the three months ended March 31, 2023. Considering today's announcement and the pending transaction, Syneos Health will no longer be hosting its previously scheduled conference call to discuss first quarter 2023 financial results.

**Advisors**

Centerview Partners and BofA Securities are serving as financial advisors to Syneos Health, Ernst & Young LLP provided additional strategic advice, and Latham & Watkins LLP is serving as legal counsel.

Gibson Dunn & Crutcher LLP is serving as legal counsel to Elliott; Kirkland & Ellis LLP is serving as legal counsel to Patient Square; and Millbank LLP and Covington & Burling LLP are serving as legal counsel to Veritas.

\* \* \*

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Syneos' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25.     On June 15, 2023, Syneos filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by Syneos management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Syneos management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning BofA's Financial Analyses*

31. With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each company selected by BofA for the analysis; and (ii) the basis for selecting the adjusted EBITDA multiple reference range of 8.0x to 11.5x.

32. With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by BofA for the analysis; and (ii) the basis for applying the enterprise value to LTM Adjusted EBITDA multiple reference range of 8.0x to 13.0x to the Company's adjusted EBITDA for the twelve-month period ended March 31, 2023.

33. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the perpetuity growth rate range of 2.50% to 3.50%; (iii) the inputs and assumptions underlying the discount rates ranging from 11.0% to 13.50%; (iv) the weighted cost of capital of the Company; (v) the net debt of the Company as of March 31, 2023; and (vi) the number of fully diluted shares of Company stock outstanding.

34. With respect to BofA's *Wall Street Analysts' Price Target* analysis, the Proxy Statement fails to disclose: (i) the research analysts observed; and (ii) the public market trading

price targets for the shares of Syneos common stock prepared and published by the research analysts.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analyses*

35. With respect to Centerview's *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for the companies selected by Centerview for the analysis; and (ii) the basis for selecting the reference range of EV/2023E Adjusted EBITDA multiples of 8.0x to 10.0x and EV/2024E Adjusted EBITDA multiples of 7.0x to 9.0x.

36. With respect to Centerview's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for the transactions selected by Centerview for the analysis; and (ii) the basis for selecting the range of multiples of EV/LTM Adjusted EBITDA of 7.0x to 10.5x.

37. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of implied terminal enterprise values for the Company; (ii) the inputs and assumptions underlying the perpetuity growth rates between 2.5% to 3.5%; (iii) the inputs and assumptions underlying the discount rate ranging from 12.0% to 14.0%; (iv) the net debt of Syneos as of March 31, 2023; and (vi) the number of fully diluted outstanding shares of Syneos stock.

38. With respect to Centerview's *Illustrative Discounted Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for applying one-year forward Adjusted EBITDA multiples of 7.0x to 9.0x; and (ii) the inputs and assumptions underlying the discount rate of 14.00%.

39. With respect to Centerview's *Premia Paid Analysis*, the Proxy Statement fails to disclose the selected transactions and the premia paid in those transactions; and (ii) the basis for

applying the reference range of 19% to 34% to the Company's closing stock price of $34.65 on February 13, 2023.

40. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial

projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

46.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Syneos within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Syneos, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Syneos, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Syneos, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 22, 2023                                                    **MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*